## WHEELER v. DIME SAVINGS BANK.

1. MUTUAL BENEFIT SOCIETIES—RECEIVER FOR FOREIGN CORPORA-
TION—LOCAL ASSETS—RIGHTS OF MEMBERS.

A member of an insolvent mutual benefit society incorporated in another State will not be allowed, through garnishment proceedings instituted after the appointment of a receiver in such State, though before the appointment of an ancillary receiver in this State, to subject property of the society within this State to a judgment upon a membership certificate maturing after the commencement of insolvency proceedings, though before a receiver was actually appointed.

2. SAME—RES JUDICATA.

The fact that the member was allowed to prosecute to judgment his claim upon the certificate does not render *res judicata* the question of his right to satisfy his judgment out of the local assets of the society.

Error to Wayne; McMahon, J., presiding.   Submitted February 1, 1898.   Decided March 15, 1898.

Garnishment proceedings by David W. Wheeler against the Dime Savings Bank, as garnishee of the Supreme Sitting of the Order of the Iron Hall. From a judgment for defendant on verdict directed by the court, plaintiff brings error.   Affirmed.

*Washington I. Robinson* (*George Gartner*, of counsel), for appellant.

*C. E. Warner*, for appellee.

HOOKER, J.   The Supreme Sitting of the Iron Hall was a mutual benefit association, organized under the laws of Indiana.   For a more complete understanding of its nature, objects, powers, and methods, reference is made to the cases of *Baldwin* v. *Wayne Circuit Judge*, 101 Mich. 119 (25 L. R. A. 739), 432; *Cohen* v. *Order of Iron Hall*, 105 Mich. 283; *Wheeler* v. *Order of Iron Hall*,

110 Mich. 437. The plaintiff became a member of this society, and received a relief-fund certificate in August, 1885, maturing in seven years. In July, 1892, the society became insolvent, and on August 23, 1892, the superior court of Marion county, Ind., appointed a receiver, who qualified upon the same day, upon a bill filed in July, praying for a receiver, and the closing of the affairs of the corporation, and distribution of assets. On August 27, 1892, the plaintiff, a resident of Michigan, began an action upon his certificate, and garnishment proceedings against the Dime Savings Bank. The action against the principal debtor resulted in a judgment on March 4, 1896, which was affirmed in this court. Proceedings were then taken to obtain a judgment against the garnishee, the disclosure having shown that it had a deposit to the credit of the local branch of the Iron Hall. This was contested by the receiver, and the plaintiff appeals from a judgment in favor of the garnishee defendant.

We now return to the proceedings to distribute the assets of the society. A month or so after the commencement of the plaintiff's actions, a receiver was appointed by the Wayne circuit court, in proceedings ancillary to those in Indiana. Those proceedings were before this court twice; first in *Baldwin* v. *Wayne Circuit Judge*, 101 Mich. 119 (25 L. R. A. 739), where it was held that the fund in the possession of the local branch was the property of the Supreme Sitting of the Order of the Iron Hall, and that it was proper to direct the ancillary receiver to turn over the funds in his possession to the receiver when it was made certain that the members from this State would share proportionately with members elsewhere. That decision recognized the right of the plaintiff to try the question of his alleged superior right to the fund garnished in the garnishment proceeding. In another proceeding an attempt was made to compel the circuit court to enjoin the prosecution of similar garnishment proceedings, but this was denied upon the ground that the discretion of the circuit judge should not

be interfered with. It was also said that the plaintiff in that case had a right to try the question of a lien by virtue of his garnishment proceedings in that case. Id. 432. The circuit court, having become satisfied that members in Michigan would be permitted to receive their proportionate share of the assets, made an order that the Michigan receiver turn over the fund in his possession to the Indiana officer.

The exact question before us is whether, after the appointment of the Indiana receiver, and before he had succeeded in acquiring possession of funds in Michigan,—to which we have held that he was entitled, under the rule of comity,—the plaintiff could, by superior diligence, obtain an advantage over his fellow members, whose interests in the concern in common with his own were represented by the receiver, or whether he was obliged to content himself with the opportunity of sharing *pro rata* through the distribution to be expected from the Indiana proceedings. That it would be inequitable to allow him to appropriate the funds to the exclusion of others holding matured certificates is obvious. It may be that there are plain debts sufficient to absorb the entire fund. It may be that the only way in which he could obtain payment from the receiver would be through an assessment of the members. Were this a suit in equity, it would be easily disposed of by relegating him to the Indiana tribunal by the application of the maxim that "he who seeks equity must do equity." But in a court of law a legal reason is required for depriving him of the lien of the garnishment which he obtained before the ancillary receiver was appointed. This must rest on one of two grounds: (1) That the law of Michigan recognizes the right of the Indiana receiver to the property, from the date and by virtue of his appointment; (2) that the relation of the plaintiff to the corporation and the other members is such as to deprive him of the legal right to satisfaction of his debt from the assets after the appointment of the Indiana receiver. In a

116 MICH.— 18.

sense, perhaps, the latter is included in the former proposition.

Passing a discussion of the former, we will examine the latter. We have shown the inequity of the plaintiff's position. Wherever such a claim has been asserted in equity, it has been denied, so far as we have been able to ascertain, upon the ground that the member has contracted with reference to the law of the State which created the corporation of which he became a member, and must therefore submit to the jurisdiction and judgments of its courts in case of the insolvency of the corporation. It would seem that this would be a defense at law as well as in equity, and it appears to be so held. See the following cases, cited by counsel: *Weingartner* v. *Insurance Co.*, 32 Fed. 314; *Fry* v. *Insurance Co.*, 31 Fed. 199; *Taylor* v. *Life Association*, 13 Fed. 493; *Rundel* v. *Life Association*, 10 Fed. 720. The last case cited goes so far as to hold that the effect is to make the receiver's powers over property co-extensive with those of an assignee in bankruptcy, or a receiver of a national bank, springing from the territorial effect of a national law. This would support the first proposition. See, also, *Davis* v. *Life Association*, 11 Fed. 781; *Bockover* v. *Life Association*, 77 Va. 85. It may be said that these cases are distinguishable, inasmuch as the plaintiff's policy matured before the Indiana receiver was appointed; but we think his rights depend upon his *status* when the Indiana proceeding was begun, which was before his policy became due.

But it is claimed that this question might have been and was raised by way of defense to the original action, and that it is therefore *res adjudicata*. If it be conceded that he secured a judgment to which he was not entitled, it does not follow that he is entitled to have it satisfied from property which, under his own contract, cannot be subjected to it. The decision of this question was not necessarily involved in the principal case, though it is true that, had his action been defeated upon the ground herein stated,

or, for that matter, upon any other, it would have ended these proceedings.

In our opinion, the judgment of the learned circuit judge should be affirmed, and it is therefore so ordered ·

The other Justices concurred.