MARY E. JOHNSON, PLAINTIFF AND DEFENDANT IN ERROR, v. THE GRAND LODGE OF THE ANCIENT ORDER OF UNITED WORKMEN OF NEW JERSEY, DEFENDANT AND PLAINTIFF IN ERROR.

Argued November 28, 1910—Decided March 6, 1911.

Forfeitures in beneficiary certificates, dealing with property rights, are not favored, and constructions of written instruments of that character against such result will be preferred if the instrument will bear it, rather than the adoption of an interpretation giving the opposite effect.

---

On error to the Supreme Court.

For the plaintiff in error, *J. I. Blair Reiley* and *William I. Barkalow.*

For the defendant in error, *McDermott & Enright.*

The opinion of the court was delivered by

VOORHEES, J.  The judgment in this case, recovered by the plaintiff, by direction of the court, upon a benefit certificate in which she is named as the beneficiary, issued by the defendant, is sought to be reviewed by this writ of error.

In the year 1888, Austin P. Johnson joined the defendant order and received a certificate of membership whereby he became "entitled to all the rights and privileges of membership * * * and to participate in the beneficiary fund * * *

to the amount of $2,000, which sum shall, at his death, be paid to Mary E. Johnson, his wife."

The certificate was, by its terms, issued upon the express condition that the member should, in every particular *while a member* of the order, comply with all the laws, rules and requirements thereof.

On the 1st day of January, 1908, Johnson was in full membership and good standing in the order, which is a fraternal, charitable, beneficial and benevolent society, organized for the promotion and welfare, social and fraternal, of its members and the protection of those dependent upon them, and particularly for the purpose of creating funds in aid of the members during sickness or other disability, and pledging the members to the payment of a stipulated sum to such beneficiary as a deceased member may have designated.

The order was, during all the time of the decedent's membership, an unincorporated association.

In his application for membership, Johnson agreed that compliance on his part with all the laws, regulations and requirements which are or may be enacted by the order is the express condition upon which he was entitled to participate in the fund and have and enjoy all other benefits and privileges of the order. It seems quite evident that there were two classes of benefits contemplated by the avowed objects of the order, which were recognized in the application for membership and incorporated in the completed contract, represented by the final beneficiary certificate. One was a property right, whereby the member was allowed to name a person who should receive a specified sum of money at his death. The other purposes and objects were those mentioned as the avowed ends of the order as above enumerated. They were not vested property interests as was the right to share in the fund. Among the by-laws is one which provides that each member should be entitled to all the rights, benefits and privileges of the order, from the date of receiving the workman degree, which was evidenced by the certificate "provided that while remaining a member of the order, he shall comply with all the laws of the order." Each member was made

liable for all assessments for the beneficiary fund made after he has received the degree.

The by-laws of the order provided that "upon the first legal day of every month an assessment shall be levied upon each member borne upon the roll at the date at which the assessment is made." "The assessment shall be paid by each member to the financier of his lodge on or before the twenty-eighth day of the month in which the assessment is levied, and in default of such payment, and without any action of the lodge or any officer, he shall thereafter stand suspended from all the rights, benefits and privileges arising from membership in the order, until he shall have been reinstated in the manner provided by these laws."

In January, 1908, an assessment of $4.80 was levied for the beneficiary fund which Johnson should have paid on or before the 28th of the same month. He did not pay on the due date, but on February 12th following, within thirty days after the default, his son made payment to the financier of the lodge for the purpose of having his father reinstated. This officer received the assessment. Johnson, the member, died on February 15th, three days thereafter. His death occurred prior to the next regular or stated meeting of the lodge, which was fixed for the 19th day of February by the by-laws.

Under this state of facts, the defendant insists that, under the above by-law and by virtue of another, which reads as follows: "When a member shall be suspended or expelled from the order for any cause whatever, he forfeits all rights, benefits and privileges, and his beneficiaries lose all right to any portion of the beneficiary fund," Johnson forfeited all his right in the benefit certificate.

The plaintiff, however, seeks to avoid this result by virtue of another by-law, which is in the following words:

"Reinstatement in three months; any suspended member who has forfeited all his rights by reason of non-payment of assessments for the beneficiary and guaranty funds may be reinstated, if he be living, at any time within a period

of three months from the date of such suspension upon the following conditions, and none other, that is to say—(1) All assessments that have been made during the time of suspension shall be paid, including the pending assessments. (2) After thirty days a certificate of good health shall be furnished by the applicant for reinstatement, at the time the assessments are paid, in the manner and upon the blank prescribed by the laws of the order. (3) The financier shall report the same to the lodge at its next stated meeting, a vote of the lodge shall be taken by ballot, and if a majority of the votes be cast in favor of reinstatement, the member shall be reinstated and his beneficiary certificate held as in full force, and a record of the reinstatement shall be made upon the minutes of the lodge."

When this case came before the Supreme Court on demurrer (*Johnson* v. *Grand Lodge, 50 Vroom* 227), that court held that the rules of the order did not render void the certificate by reason of failure to pay the dues nor terminate the member's relation with the order, but led merely to the suspension from the rights and privileges arising from his membership until reinstatement, and that the last-quoted by-law meant that payment of the delayed assessment within thirty days after suspension *ipso facto* entitled the beneficiary to restoration as a matter of right, but that after 'the period of thirty days, payment, together with a health certificate and also a vote of the members of the lodge in favor of his restoration to membership, were necessary.

The insistence of the order, however, is that this by-law means that a vote to reinstate is required, whether the payment of the assessment be made within or after the period of thirty days; that Johnson was suspended by operation of the by-laws, after which he had no absolute and unconditional right to be reinstated, but had a right after payment of the delayed assessment to have that question submitted to the lodge of which he was a member.

The relation between these parties must be determined by the certificate and the by-laws of the order, and it is likewise clear, as above noted, that there are two classes of objects

to be attained by membership, one, a property interest, and the other more of a social and fraternal character, which is not property. That this distinction exists is pointed out in *O'Brien* v. *Musical Mutual P. & B. Union,* 19 *Dick. Ch. Rep.* 525, and cases therein cited.

It seems also quite evident that there is a distinction made by the by-laws above cited, between suspension and expulsion of members, and it is clearly suspension only which arises *ipso facto* from the non-payment of dues.

It is true, suspension may result in forfeiture, at the end of three months, in default of application for reinstatement, because reinstatement can take place only within that period. But the by-law on that subject is as much a part of the contract as the certificate itself, and entitles the beneficiary to such rights and privileges as are given thereby. Forfeitures in instruments of this class, dealing with property rights, are not favored, and constructions of written instruments of that character against such result will be preferred, if the instrument will bear it, rather than the adoption of an interpretation giving the opposite effect.

This court said in *Hampton* v. *Hartford Fire Insurance Co.,* 36 *Vroom* 265: "The court will never seek for a construction of a forfeiture clause in a policy which will sustain it, if one, which will defeat it, is reasonably deducible from the terms or words used to express it." And of like import are many of our cases. *Henn* v. *Metropolitan Life Insurance Co.,* 38 *Id.* 310; and as applied to breach of warranties, see *Dimick* v. *Metropolitan Life Insurance Co.,* 40 *Id.* 384, and cases therein cited.

Therefore, such destructive result should not be adopted where it is possible otherwise to glean from the order's own terms, proferred in avoidance of it, and where its by-laws may reasonably be read so as to preserve property rights.

The aspect which this suit presents is that of a property right, and a suspension from its enjoyment, which, if restoration is not sought for and obtained as contracted for, within a definite period, will terminate the contract by its forfeiture.

The sharp point made by the defendant is that in all cases an affirmative vote of the lodge for restoration is a *sine qua non*.

The by-law already quoted distinguishes between reinstatements made before and after a period of thirty days, admittedly requiring in one case, a certificate of health. Does the further condition mentioned in this law of a vote apply in all cases?

The Supreme Court held and we agree with its conclusion, that an affirmative vote is necessary only in case the application is made after a thirty days' default.

What question is there to be decided in the former case? The dues have been paid, there is no intimation in the contract that at that period a question of the health of the assured will be raised. The condition of a health certificate, not being demandable until after thirty days, excludes the idea that any question of health will be made until the lapse of that period.

When the dues have been paid within thirty days, there can therefore be no subject of consideration for the lodge, so far as property rights are concerned, which is not arbitrary in its character, *i. e.*, whether it is the mere will of the lodge to continue the suspension until it shall have reduced the liability of the order by allowing the suspension to grow and ripen into a forfeiture of the rights of the assured. Quite the opposite, however, obtains when the payment has been made subsequent to the thirty days and the assured has had notice, through the rules of the order, that a health certificate will then be required. There the regularity and sufficiency of the certificate may, and is likely to be questioned, and argument may be raised for or against the reinstatement upon that fact, and indeed upon the condition of health of the applicant, an inquiry reasonably indicated by the rules, as at that period, likely to arise and become a question for the lodge to decide.

Why should there be a vote when the only prerequisite is the payment of dues? What question is to be by it decided? Nothing save to evince the will of the body interested finan-

cially to terminate the liability of the order of which it forms a part. To allow such a question to be submitted to the will and caprice of a tribunal, created by the order, the determination of which may result in forfeiting the property of one and vesting it in the organization whose individual members constitute such tribunal, is a proceeding which was, in principle, condemned by this court in *State Council* v. *Enterprise Council, No. 6, 5 Buch.* 245.

Nor should the verbal and grammatical construction of the by-law be overlooked.

The third sub-division reads, "The financier shall report *the same* to the lodge at its next stated meeting and the vote of the lodge shall be taken by ballot." What is thus required to be reported, must be determined by the antecedent, to which the words "the same" must refer. Not only does the entire preceding sub-division refer to the certificate of good health, but it is the nearest antecedent. Such a construction was referred to by Mr. Justice Depue in *Summerman* v. *Knowles,* 4 *Vroom* 202, as being the proper grammatical construction and in subordination to the maxim *ad proximum antecedens nisi impediatur sententia.*

The contract, upon its issue, conferred upon the member a contractual and vested right for the payment of a definite sum of money, and every reasonable intendment should be given to a by-law not to impair unreasonably that right, and a stipulation capable of being read, so as not to work a forfeiture, in a case of this sort, should be so construed and should receive a meaning, without doing violence to the language and to the relations between the parties, to further the subsistence of the contract and not to defeat it. Such a view was applied to the enactment of a by-law, promulgated subsequently to the making of a contract of insurance, although such contract provided that all after enacted by-laws should govern. *Sauter* v. *Improved Order,* 47 *Vroom* 763.

It is said that this is not a forfeiture, but the avoidance of a forfeiture; that the forfeiture has already occurred by the mere fact of failure to pay the dues on time and its avoidance is matter of grace. The language, however, that the non-pay-

ment of the dues shall result in a suspension, and the further provision for reinstatement within a definite period, may reasonably imply, that forfeiture is not to be deemed complete until three months shall have elapsed. The reinstating by-law, by being liberally construed in favor of the assured, will avoid the ultimate forfeiture. Being for the benefit of the order, it is to be strictly construed and enforced only when such is the plain intent and meaning of the contract. Where the conditions are repugnant, or are not clear, enforcement should be given to such as are in favor of a continuance of the policy, thereby preserving the property right.

These views lead to an affirmance of the judgment and render it unnecessary to consider the other assignments of error, which have been argued, aside from the fact that they appear to have no exceptions to rest upon.

The judgment will be affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, REED, TRENCHARD, PARKER, VOORHEES, MINTURN, BOGERT, VREDENBURGH, CONGDON, JJ. 10.

*For reversal*—THE CHANCELLOR, SWAYZE, BERGEN, VROOM, JJ. 4.